**KING INDUSTRIES, INC., Plaintiff,**

v.

**WORLCO DATA SYSTEMS, INC. and Copelco Leasing Corporation, Defendants.**

**Civ. A. No. 88–783–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

March 3, 1989.

---

Judith M. Cofield, Shuttleworth, Ruloff, Giordano & Kahle, P.C., Virginia Beach, Va., for King Industries, Inc.

Lisa N. Speers, Schnader, Harrison, Segal & Lewis, Washington, D.C., Thomas Earl Patton, McLean, Va., for Worlco Data.

Raymond C. Nugent, Stackhouse, Rowe & Smith, Norfolk, Va., for Copelco Financial & Copelco Leasing.

ORDER

CLARKE, District Judge.

This matter comes before the Court on defendant Worlco Data Systems, Inc.'s ("Worlco") Motion for Judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and defendant Copelco Leasing Corporation's ("Copelco") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff has responded, the parties have been heard orally, and therefore the Motions are ripe for disposition.

This action was originally filed in the Circuit Court for the City of Virginia Beach, Virginia. Defendant Worlco removed this action to this Court pursuant to 28 U.S.C. § 1441. Plaintiff has alleged that complete diversity exists between the parties and that the amount in controversy exceeds $10,000. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332. The plaintiff's Complaint is in the following three counts: Count I, Declaratory Judgment; Count II, Breach of Warranty; and Count III, Fraud.

Plaintiff alleges in its Complaint that it is a corporation engaged in the sale and installation of floor coverings, and that on December 23, 1987 plaintiff and Worlco entered into a contract to purchase a "Floorcon Plus Computer System." (Complaint, ¶¶ 1 and 6). Plaintiff further alleges that on that same day, plaintiff entered into a lease/purchase contract with defendant Copelco in order to finance the purchase of the computer system. (Complaint, ¶ 7). At Paragraph 9 of the Complaint, plaintiff asserts that several inconsistent provisions exist between the Worlco purchase contract and the Copelco lease/purchase contract. The Worlco contract provides a right to purchase for $1.00 at lease-end, that disputes arising from the contract are arbitrable in Philadelphia, Pennsylvania, and the contract binds all successors and assigns. The Copelco contract contradicts these provisions in that it provides there is no right to purchase, that contract disputes are to be heard by a court

in Camden, New Jersey, and that no covenants with Worlco bind Copelco.

Plaintiff asserts that these inconsistencies constitute a *prima facie* showing that there was no meeting of the minds, and therefore the contracts are void or voidable. (Complaint, ¶ 10). In Count I of its Complaint, plaintiff requests that the Court declare which of the two contracts controls. (Complaint, ¶ 11). In Count III, plaintiff alleges that defendants represented that plaintiff would be afforded a $1.00 buyout at lease-end, and that they knew, or should have known, that the Copelco lease denied this right. (Complaint, ¶ 23). The plaintiff further alleges that it was fraudulently induced to sign the two contracts because defendants failed to inform plaintiff of the inconsistent provisions in the two contracts. (Complaint, ¶ 26).

Finally, in Count II of the Complaint, plaintiff alleges that plaintiff relied upon defendants' skill and judgment in determining which computer equipment was best suited for its business needs, and that defendants did represent and expressly warrant that the computer was fit for the specific purpose for which it was intended. (Complaint, ¶¶ 15 and 16). Plaintiff then alleges that the equipment was not fit for the purpose for which it was intended, and that plaintiff was damaged as a result of these fraudulent representations.

At oral argument, plaintiff's counsel stated that plaintiff's business is in the construction trade, as opposed to retail carpet sales, and that plaintiff relied upon the representations of a Worlco sales agent who stated that the "builder's package" software was compatible with plaintiff's needs; that is, the sale of carpeting and floor covering in the construction trade. Plaintiff's counsel further stated that plaintiff has been unable to use the computer system because it does not comport with plaintiff's business needs.

 Defendants Worlco and Copelco argue that plaintiff's claim for breach of express and implied warranties fails as a matter of law because of the disclaimer clauses in both agreements. The disclaimer in the Worlco contract is on the front

page of that agreement above the signature line. The disclaimer, in capital letters, states:

WDS MAKES NO WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

The Copelco lease agreement also contains a disclaimer in capital letters above the signature line which states:

LESSOR NEITHER BEING THE MANUFACTURER, SUPPLIER, NOR A DEALER IN THE EQUIPMENT, MAKES NO WARRANTY, EXPRESS OR IMPLIED, TO ANYONE, AS TO THE SUITABILITY, DURABILITY, DESIGN, CONDITION, CAPACITY, PERFORMANCE OR ANY OTHER ASPECT OF THE EQUIPMENT OR ITS MATERIAL OR WORKMANSHIP. LESSOR FURTHER DISCLAIMS ANY IMPLIED WARRANTIES OF ANY KIND WITH RESPECT TO THE EQUIPMENT INCLUDING THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR USE OR PURPOSE. AS TO LESSOR AND ITS ASSIGNS, LESSEE LEASES THE EQUIPMENT "AS IS."

Section 8.2–316(3)(a) of the Code of Virginia provides that, "all implied warranties are expressly excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty...." In order to limit implied warranties, however, the exclusionary language must be "conspicuous." Va. Code § 8.2–316(2); *see, Armco v. New Horizon Development Co.*, 229 Va. 561, 331 S.E.2d 456 (1985). A provision is conspicuous when "it is so written that a reasonable person against whom it is to operate ought to have noticed it." Va.Code, § 8.1–201(10). Language in the body of an agreement is conspicuous when "it is in larger or other contrasting type or color." *Id.* Whether a provision is conspicuous is a question of law for the court. *Id.*

The Court finds that the disclaimer provisions in the Worlco and Copelco contracts are conspicuous as that term is defined in Section 8.1–201(10) of the Code of Virginia. The Court further finds that the language used in the disclaimers is sufficient to limit the defendants' liability for breach of implied warranties. Accordingly, Count II of plaintiff's Complaint, insofar as it purports to assert a cause of action for breach of implied warranty, is DISMISSED.

■ The plaintiff in Count II has also alleged that defendants breached an express warranty. Under the Virginia Uniform Commercial Code § 8.2–313, express warranties by the seller are created by:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain ... or by

(b) Any description of the goods which is made part of the basis of the bargain.

The plaintiff alleges that the representations of defendants' sales agents that the "builder's package" software was suitable for its business needs became the basis of the bargain. (Complaint, ¶ 16). Based upon the statements of counsel at oral argument, the Court assumes for purposes of this Motion that an express warranty was made by Worlco's sales agent.

Both the Worlco and Copelco contracts purport to disclaim liability for express warranties. Assuming that an express warranty was made by Worlco's sales agent, the next question is whether the disclaimer provisions in the contract effectively limit defendant's liability. Section 8.2–316(1) of the Code of Virginia provides:

Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this title on parol or extrinsic evidence (§ 8.2–202) negation or limitation is inoperative to the extent that such construction is unreasonable.

The effect of this section is that, "If the factfinder determines that a seller's statement created an express warranty, words

purportedly disclaiming that warranty will have no effect...." 1 J. White & R. Summers, *Uniform Commercial Code,* § 12–2 (3d ed. 1988).

Section 8.2–316(1) makes it clear, however, that its provisions are subject to the provision of Section 8.2–202 on parol and extrinsic evidence. The Virginia parol evidence rules states that:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplied.

(b) by evidence of consistent additional terms *unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.*

Va.Code, § 8.2–202 (emphasis added). Comment 2 to Section 8.2–316 states that the reference to the parol evidence rule is to protect the seller against "false allegations of oral warranties." There are, however, two important restrictions on the seller's protection. 1 J. White & R. Summers, *Uniform Commercial Code,* § 12–4 (3d ed. 1988). First, a written agreement may be contradicted by parol evidence if it was not intended by the parties as the final expression of their agreement. *Id.* Second, even if the writing was intended as the final expression of part of the parties' agreement, it may be supplemented with evidence of consistent additional terms.

In *Hoover Universal, Inc. v. Brockway Imco, Inc.,* 809 F.2d 1039 (4th Cir.1987), the Fourth Circuit addressed the effect of a merger clause on the admissibility of extrinsic evidence. In *Hoover,* the buyer of industrial equipment alleged that the seller had misrepresented the cavitation capacity of its equipment. *Hoover,* 809 F.2d at 1041. The misrepresentation was contained in a handout which summarized certain technical data in connection with the equipment. *Id.* The handout had been

given to plaintiff's representatives prior to entering the contract. *Id.* The plaintiff alleged in its complaint that the handout created an express warranty. *Id.*

The Fourth Circuit began its analysis by noting that the written contract between the parties contained an enforceable disclaimer clause disclaiming warranties of merchantability, condition or fitness for a particular purpose. *Id.* at 1041–42. The contract also contained a well-drafted merger clause. *Id.* at 1043. The court also noted that the cavitation capacity of the seller's equipment was not mentioned in the final written contract between the parties. *Id.* at 1042. The Fourth Circuit found that the district court did not commit error in finding that the contract between buyer and seller was the "complete and exclusive statement" of their agreement. Accordingly, the Fourth Circuit held that because of the detailed nature of the contract, including the well-drafted merger clause, the Virginia parol evidence rule precluded the admission of the handout in an effort to establish an express warranty.

An effectively worded merger clause can have the same effect as a disclaimer. 1 J. White & R. Summers, *Uniform Commercial Code,* § 12–4 (3d ed. 1988). The Worlco contract contains a merger or integration clause, in capital letters above the signature line, which provides:

ALL TERMS AND CONDITIONS WRITTEN ON THE REVERSE SIDE HEREOF AND ON THE FACE HEREOF, INCLUDING SCHEDULE A HERETO, CONSTITUTE THE COMPLETE AND BINDING CONTRACT WHEN ACCEPTED BY WDS. THIS ORDER EXPRESSLY LIMITS ACCEPTANCE TO SUCH TERMS AND CONDITIONS PROPOSED BY THE BUYER ARE REJECTED.

Plaintiff argues that despite the integration clause, the contract is not complete because it contains no description of the "builder's package" and therefore evidence of consistent additional discussions is admissible.

The Court finds, however, that the parol evidence rule precludes the admission of

oral statements which contradict the terms of a written disclaimer. *Hill v. BASF Wyandotte Corp.,* 696 F.2d 287, 291 (4th Cir.1982). In *Hill,* a farmer brought suit for breach of warranty and misrepresentation against the manufacturer of an agricultural herbicide. The plaintiff farmer alleged that a sales agent for defendant manufacturer had made false oral representations upon which plaintiff relied to his detriment. Each of the cans of herbicide purchased by plaintiff contained a disclaimer of express and implied warranties. The Fourth Circuit found that the oral representations made by defendant's sales agent were not admissible to vary the terms of sale and warranty on the product label. Additionally, most courts hold that when a disclaimer of warranties is contained in an integrated agreement, parol warranties are "contradictory" within the meaning of parol evidence rule and are therefore inadmissible. 1 J. White & R. Summers, *Uniform Commercial Code,* § 12–4 n. 2 (3d ed. 1988).

▮ Accordingly, this Court finds that even if the oral representations made by Worlco's representative became the "basis of the bargain" and therefore constituted an express warranty, those oral statements would not be admissible to contradict or vary the disclaimer of express warranties clause contained in the integrated agreement between Worlco and plaintiff. This parol evidence would be admissible, however, in a properly pleaded fraud in the inducement claim. *See, George Robberecht Seafood, Inc. v. Maitland Bros. Co.,* 220 Va. 109, 255 S.E.2d 682, 683 (1979).

▮ Although the leasing agreement between Copelco and plaintiff does not contain an integration clause, Copelco's liability is limited by the warranty disclaimer clause and by the following language: "IF THE EQUIPMENT IS UNSATISFACTORY FOR ANY REASON, LESSEE SHALL MAKE CLAIM ON ACCOUNT THEREOF SOLELY AGAINST SUPPLIER, AND ANY OF SUPPLIER'S VENDORS." The plaintiff's Complaint makes it clear that Copelco is a financing agency and not a supplier. (Complaint, ¶ 3). The

plaintiff argues that Worlco's agents had actual or apparent authority to act on behalf of Copelco. Attached to plaintiff's Complaint is a letter from a Worlco sales representative to Mr. Foy King, president of plaintiff King Industries. (Complaint, Ex. C). The letter indicates that an option to lease the Floorcon Computer System can be arranged through Worlco, and that a $1.00 buyout is available at lease-end. The plaintiff alleges that Worlco was acting on behalf of Copelco when it made this misrepresentation concerning the $1.00 buyout. (Complaint, ¶¶ 23 and 25). While the letter from Worlco to plaintiff suggests that Worlco acted as Copelco's agent with respect to arranging financing, the Complaint does not allege, nor was it stated in oral argument, that Worlco acted as Copelco's agent with respect to the merchantability or fitness of the computer system. Moreover, the aforementioned language in the Copelco leasing agreement unequivocally states that warranty claims should be made against the supplier and not the lessor-financing agency. Accordingly, Count II of plaintiff's Complaint is DISMISSED.

In Count III of plaintiff's Complaint, it is alleged that defendants fraudulently induced plaintiff to sign the Worlco and Copelco contracts. Plaintiff alleges that the letter from Worlco's sales agent to plaintiff's president represented that plaintiff would be afforded a $1.00 buyout at lease-end, when defendants knew, or should have known, that the lease terms forwarded to plaintiff denied this right. Plaintiff further alleges defendants failed to inform plaintiff of the mutually inconsistent provisions in the two contracts.

The Court finds that plaintiff's allegations of fraud as stated in its Complaint are without merit. In *First National Exchange Bank v. Johnson*, 233 Va. 254, 355 S.E.2d 326, 329–30 (1987), the Virginia Supreme Court held that, "In the absence of fraud, duress, or mutual mistake ... an individual having the capacity to understand a written document who signs it after reading it, or who signs it without reading it, is bound by the signature." *See also, Carter v. Carter*, 223 Va. 505, 291 S.E.2d 218, 221 (1982) (responsibility to read deed on grantor; failure to do so does not constitute fraud unless grantee prevented or induced grantor not to read it). The plaintiff's argument that defendants' failure to inform plaintiff of the inconsistent provisions in the two contracts constitutes fraud in the inducement simply does not withstand scrutiny.

The law in Virginia is that in those circumstances where a prudent buyer would have conducted an investigation and, thereby, discovered the seller's misrepresentation, a buyer who fails to make such an investigation may not assert fraud based on that misrepresentation. *Hoover*, 809 F.2d at 1044. *See, e.g., Armentrout v. French*, 220 Va. 458, 258 S.E.2d 519 (1979). A buyer who fails to conduct an investigation may still recover, however, if the seller's conduct intentionally diverts the buyer from engaging in a reasonable inquiry. *Id.* There is nothing alleged in the Complaint which would suggest that either defendant prevented plaintiff from reading the two agreements. In the instant case, the plaintiff King Industries as a prudent buyer was charged with the duty of conducting an investigation by reading the two contracts at issue. If the plaintiff had carefully read the documents in question, it would have discovered the inconsistencies. Accordingly, Count III of plaintiff's Complaint is DISMISSED.

In Count I, plaintiff asks this Court for a declaratory judgment as to which of the two contracts controls. In light of the Court's dismissal of Counts II and III, plaintiff's request for declaratory judgment is MOOT.

Accordingly, defendant Worlco's Motion for Judgment on the Pleadings and defendant Copelco's Motion to Dismiss are GRANTED. This action is DISMISSED with prejudice.

IT IS SO ORDERED.